Lester S. NOLAN, Plaintiff,

v.

The EASTERN COMPANY, a Connecticut Corporation, Harry A. Hershey, Arnold Goldsborough Co., a Delaware Corporation, Van Demark and Lynch, Inc., a Delaware Corporation, and the Mayor and Council of Wilmington, Defendants.

Court of Chancery of Delaware. New Castle.

April 17, 1968.

Bruce M. Stargatt and Richard H. May, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

C. Edward Duffy and Murray M. Schwartz, of Longobardi & Schwartz, Wilmington, for defendants The Eastern Co. and Harry A. Hershey.

David A. Eastburn and Edmund J. Bodziak, Wilmington, for defendant Arnold Goldsborough Co.

Thomas J. Healy, Jr., Wilmington, for defendant Van Demark and Lynch, Inc.

Samuel H. Lewis, Asst. City Sol., for defendants The Mayor and Council of Wilmington.

MARVEL, Vice Chancellor:

On April 6, 1964, plaintiff and the defendant The Eastern Company, after negotiating several preliminary agreements, executed a conclusive contract providing for

the sale to plaintiff by the defendant Eastern of three parcels [1] of land owned by the latter on the east side of Wilmington, said parcels being roughly bounded by the main tracts of the Baltimore and Ohio Railroad, by two cut-off lines of the Penn-Central Railroad and by New Castle and New York Avenues. Plaintiff primarily seeks a permanent injunction against any interference on the part of the defendant Hershey with plaintiff's use of what he claims to be a portion of a public street bordering his above described lands. On the maps of record this street is referred to as New York Avenue. The defendant Hershey, the successor in title to Truck Terminal Realty Co., claims to be the owner of the fee to such alleged portion of street and denies that plaintiff has any interest therein. At the inception of the action Truck Terminal Realty Co. was a named defendant. However, the complaint as to such defendant has been dismissed, and The Mayor and Council of Wilmington have been permitted to intervene as a defendant.

Plaintiff's claim for injunctive relief is based on a contention that his contract with Eastern entitles him to use the entire length of New York Avenue as it is portrayed on certain maps of record and that he relied on such alleged representation in deciding to enter into the April 6 contract. According to such maps, such street runs from New Castle Avenue along the entire length of plaintiff's industrial plant to such tract's southeast corner. Plaintiff has moved for summary judgment against the defendants Harry A. Hershey and The Mayor and Council of Wilmington. All of the defendants have moved for summary judgment against plaintiff.

Defendants, while conceding that plaintiff has the right to use New York Avenue up to and including a gatehouse leading into his plant property, contend that such right of way does not exist beyond such gatehouse, the same being located scme 1025 feet from the intersection of New Castle and New York Avenues. Such defendants seek a ruling to such effect.

On April 23, 1964, title to the aforesaid three parcels of land was conveyed to plaintiff by Eastern, and plaintiff stresses the point that the deed whereby such conveyance was made, in its description of parcel no. 1 (the 27.1 acre tract above referred to), recites a course for such property along the northeasterly side of New York Avenue for a distance of 1314.4 feet, a course, which, when added to the 375 feet extending from parcel no. 1 to New Castle Avenue along plaintiff's 7.71 acre tract, constitutes the entire plotted length of New York Avenue from New Castle Avenue to a southeasterly outlet at the eastern end of such avenue. The deed is silent, however, as to plaintiff's actual rights in New York Avenue as plotted, and, in point of fact, at the time of the April 23, 1964 deed, New York Avenue, as it actually existed, terminated at the gatehouse on parcel no. 1, a point located some 1025 feet from New Castle Avenue.

In short, it is clearly established on the present record that while New York Avenue was depicted on maps submitted to plaintiff as an existing public street along the entire length of plaintiff's property, the portion of such avenue which extends beyond the gatehouse is and has been for many years a morass, virtually impassable for motor vehicles.

Plaintiff contends, however, that when he became interested in the possibility of purchasing the tracts here in issue, Eastern's agent, Arnold Goldsborough, furnished him with a brochure in which a map was included which depicted New York Avenue as extending from New Castle Avenue along the entire southwesterly length of the parcels plaintiff proposed to purchase, or a total distance of 1689.4 feet. Plaintiff was thus allegedly led to believe that he would have the right to use New York Avenue from its intersection with New Castle Ave-

[1] The largest of these tracts has an area of 27.1 acres, a second is made up of 0.8 acres, and a third contains 7.71 acres.

888

nue until it purportedly debouched into an open area to the southeast near the tracks of the New Castle cut-off of the Penn-Central Railroad.

Contending that New York Avenue is a duly dedicated public street for its entire indicated length or that he has an implied easement in such area, plaintiff, as noted earlier, seeks a permanent injunction against the defendant Hershey, who claims the fee to such area, enjoining such defendant from interfering with plaintiff's use of such street for its entire indicated length. In the alternative, should the Court find that New York Avenue is neither a dedicated public street nor one in which plaintiff has an implied easement for its entire indicated length, plaintiff prays that he be awarded damages to be assessed against the defendants, Eastern, Goldsborough, and Van Demark and Lynch, Inc., for their alleged false representations at the time of the sale here involved, the latter two being in the order named the real estate agent and surveyor who were instrumental in drawing up the brochure which depicted New York Avenue as a public street along the entire length of what was then Eastern's property.

At or about the time plaintiff became interested in purchasing industrial property between New Castle and New York Avenues, the defendant Truck Terminal Realty Co. was similarly engaged in negotiations with Eastern looking towards the purchase of the eastern portion of what was depicted on the official maps as "New York Avenue," namely the uncleared and untravelled area running east from what is now plaintiff's gatehouse towards the Christiana River as well as a much larger tract lying on the southerly side of New York Avenue. Such transaction, after several missteps, was consummated at the end of April, 1964, after the City had entered the negotiations and at the insistence of Truck Terminal had removed the unimproved portion of "New York Avenue" from the City map. As a re-

sult of these changes and transactions, including a correction in the length of the area to be acquired by the City, the City of Wilmington acquired the fee to the entire paved 1025 feet of New York Avenue, while Truck Terminal acquired a similar interest in the remainder of what had been depicted on the maps as "New York Avenue," as well as the substantially larger tract lying along the southeasterly side of such avenue.

Plaintiff contends, first of all, that a statutory dedication and acceptance of New York Avenue as a public street was accomplished for its entire indicated length by reason of the provisions of an 1891 Delaware statute (19 Del.Laws, Chapter 205),[2] arguing that in 1917 all of the parcels here involved were part of a larger tract of land owned by the Eden Park Corporation which in that year prepared a plot-plan of its property. Such plot-plan discloses that such corporation's property lay partly in the City and partly in the County, the greater portion of the proposed development lying outside of the City limits. The parcels here involved, however, are shown to lie entirely within the City limits and at no point touch the boundary line between the City and County. Such plot-plan also discloses the proposed laying out of various streets in a planned development, including streets to be known as New York Avenue and Nearing Avenue, the latter street being shown to intersect the former at its eastern end. The Eden Park Corporation submitted such plot-plan to the board of directors of the Wilmington Street and Sewer Department for approval, and, upon such approval, recorded it.

Plaintiff contends that the preparation, approval and recordation of such plot-plan were effected in compliance with the 1891 statute above referred to and that under the terms of that statute New York Avenue was thereby dedicated and accepted as a public street. However, the terms of such statute make it clear that such a statutory

2. Entitled: "An Act to provide for the Establishment of Streets and Grades on lands contiguous to the City of Wilmington."

dedication concerns rights of ways laid out on plot-plans of lands bordering on the City limits of Wilmington. Furthermore, even if the statute applied here, plaintiff's reliance on the principle of statutory dedication is misplaced inasmuch as at the time of the filing of the Eden Park plan the developer did not formally acknowledge an intent to dedicate (see 19 Del.Laws, Chap. 205). Finally, the case of State Highway Department v. Roberts (Del.Ch.) 215 A.2d 250, which is concerned with a portion of Eden Park lying outside of the City, is of no help to plaintiff because dedication was there found to have been effected by public user.

Plaintiff goes on to point out, however, that under the terms of a statute enacted in 1895 (20 Del.Laws, Chap. 201), the provisions of the 1891 statute were made applicable to County lands within a half-mile radius of City limits. He argues that it would be senseless to have the 1891 statute, as supplemented, apply only to lands contiguous to or outside the City limits because of the many instances in which City streets might extend into the County, the statute would have reference only to that portion of such streets lying outside the City limits. Plaintiff's contention, however, overlooks the fact that the City's power to control the establishment and maintenance of streets within its borders antedates either of the statutes above referred to, such power having been transferred to the Street and Sewer Department of Wilmington as early as 1887 (18 Laws of Delaware, Chap. 188). Accordingly, the statutes of 1891 and 1895, while looking toward the orderly extension of City streets into the County, in no way affected the City's pre-existing authority over the maintenance of its own streets, and the maps of record clearly disclose that because of its short east-west course between New Castle Avenue and the area near the Penn-Central cut-off to New Castle, there has never been any possibility of New York Avenue being extended into the County.

■ I conclude that merely because the Eden Park Corporation had the duty imposed on it by the 1891 statute to prepare a plot-plan of that part of its lands which were located outside as well as contiguous to the City limits, and to have such plot-plan recorded after approval thereof by the board of directors of the Street and Sewer Department of Wilmington, does not mean that the City portion of Eden Park depicted in said plot-plan was regulated by such statute.

Plaintiff next argues that, in any event, the undisputed material facts in the present record support a finding that a common law dedication to the public of the unpaved portion of what has been depicted on maps as New York Avenue, has been shown to have occurred.

■ However, while it is established on the record that New York Avenue, as it extends for a distance of 1025 feet east from New Castle Avenue up to the gatehouse which gives access to plaintiff's plant, has been open to the public at least since 1918, there is no evidence of use of such avenue east of plaintiff's gatehouse. The westerly part of New York Avenue was at first a dirt road but was subsequently paved around the beginning of this country's entrance into World War II. All parties agree that plaintiff is entitled to use such section of such avenue. However, the remaining portion of New York Avenue from the gatehouse to what was depicted as Nearing Avenue on the Eden Park map has never been improved or opened to the public and has never purported to be a street or right of way. Actually, it is covered with grass, weeds, rocks, small trees, and bushes, and has been in such condition for a number of years. At times, it is practically under tidewater. Hypothetically extended, it reaches tracks of the Penn-Central Railroad at a point where there is no crossing. Its theoretical terminus beyond the railroad tracks is at the banks of the Christiana River. In short, I am satisfied on consideration of the un-

disputed facts of record that New York Avenue, Nearing Avenue, and several other streets on the plot-plan here involved were merely "paper streets," drawn on City maps in order to serve notice on the public that at some future date the City might open them to the public. Until 1964, when it acquired the fee to the street in question, the City evinced no interest even in the travelled bed of New York Avenue although the public may well have acquired an easement in the travelled portion thereof many years earlier.

Plaintiff however, contends that irrespective of what the City's intentions were concerning the unopened portion of New York Avenue prior to 1964, the approval of the Eden Park Corporation's plot-plan in 1917 by the board of directors of the Street and Sewer Department of the City of Wilmington and the recordation of such plot-plan in the Recorder of Deeds Office constituted an acceptance of an offer to dedicate New York Avenue to public use, Reinhardt v. Chalfant, 12 Del.Ch. 214, 110 A. 663, and Kelly v. Phillips, 13 Del.Ch. 261, 118 A. 230.

 In the Reinhardt case, the Court ruled that the recording of a plot-plan, viewed in the light of the wording of the conveyance involved, constituted an offer of dedication to public use of the street which bordered the land in question. The Court, however, pointed out that in order for such dedication to be complete, there must also be an acceptance of such proffered dedication either by public use or by other action on the part of the public authorities. In the present case, plaintiff concedes that there has been no user of the disputed section of New York Avenue, nor is there any evidence that the City ever exercised any control over that section. In fact, the deposition of the former Chief Engineer of the Street and Sewer Department and the 1964 resolutions of the board of directors of the Wilmington Department of Public Works which removed the unimproved section of New York Avenue from the City map would appear to confirm the

fact that the City evinced no interest in such portion of such street prior to its intervention in this case in 1964. The mere approval of the 1917 plot-plan by the board of directors of the then Street and Sewer Department did not therefor, under the surrounding circumstances, constitute an acceptance of New York Avenue as a public street. Compare Kelly v. Phillips, supra, in which the Court found sufficient evidence of public user. See also Maciey v. Woods, 38 Del.Ch. 528, 154 A.2d 901.

Plaintiff next contends that acceptance of New York Avenue as a public street may be predicated on the theory that a portion having been obviously opened to the public, as a consequence the entire street became effectively dedicated. To support such argument plaintiff cites the case of Singewald v. Girden, 36 Del.Ch. 152, 127 A.2d 607. In such case, however, a special situation existed in that the State owned the entire lands in question. The Court, noting a situation not found here, stated:

"When a state makes a plat of its own land and publicly sells lots as abutting on streets shown therein, the same authority which makes the dedication, by the same act accepts it on behalf of the public. The dedication and its acceptance are in the same acts * * *".

 Plaintiff further contends that dedication and acceptance may be predicated on the fact that all known plot-plans and City maps depict New York Avenue as running the entire length of plaintiff's property. This contention, and indeed other similar contentions of plaintiff concerning dedication are untenable in the light of the recent decision of the Supreme Court of Delaware in Lickle v. Diver, (Sup.Ct.Del.) 238 A.2d 326, a case in which the parties differed on the question as to whether or not plaintiff had the right to use what he claimed was a part of 13th Street between Union Street and Grant Avenue in Wilmington. The Supreme Court affirmed the finding of the lower court to the effect that despite the fact that the area in question appeared on City maps as a part of 13th

Street, and notwithstanding proof of acts such as the establishment of grades, the denial of a building permit for the area, and the erection of a street sign, nonetheless such evidence when balanced against the evidence to the contrary, particularly the City's disavowal of any interest in the area, did not warrant a holding that a public street existed. The holding is controlling here, there being no showing in the case at bar that the area which plaintiff here seeks to use ever had any physical existence as a street.

■ I conclude that plaintiff here has failed to establish that the plotted portion of New York Avenue over which he seeks a right to travel is a public way resulting from dedication by the owner thereof followed by user by the public or acceptance of responsibility for maintenance and the like by the appropriate public authority. Finally, plaintiff has failed to show that he is the beneficiary of an implied easement in such area, inasmuch as no road has ever existed over the area through which plaintiff seeks passage, Maciey v. Woods, supra.

Plaintiff goes on to contend that, in any event, inasmuch as the defendants other than the City were responsible for submitting to plaintiff certain plot-plans (on which he relied) which negligently or deliberately represented all of New York Avenue to be a public street, he is entitled to damages from such defendants, and that he is entitled to a trial of such issue of damages.

■■ In response to this contention, defendants point out that the record clearly establishes that not only plaintiff's representative, a Mr. Verbofsky, but also his then attorneys were informed of the fact that plaintiff, upon taking title to the plant area he desired, would have no rights in the unpaved portion of New York Avenue. And I am satisfied that the record discloses that the relevant details concerning New York Avenue alluded to in this opinion were openly disclosed by counsel for Eastern and were discussed by representatives of both plaintiff and defendants, the last discussion having taken place on April 23, 1964, on the occasion of plaintiff's taking title to the three parcels which he had agreed to purchase from Eastern. In short, the undisputed facts are to the effect that imputed knowledge of the relevant facts concerning New York Avenue must be attributed to plaintiff (who incidentally was "in and out" of the room but present at the April 23 settlement), because his authorized agents had actual knowledge concerning the fact that plaintiff would have no rights in New York Avenue beyond the gatehouse. Knowledge of an agent acquired while acting within the scope of his authority is imputable to the principal. Finally, plaintiff can not rely on the principle of excusable neglect on his part. Assuming plaintiff was actually in the dark as to the true facts concerning New York Avenue, he clearly could and should have acquired the knowledge which his agents possessed. 7 Am.Jur. 2d, Attorneys at Law, § 107 and § 110. Compare Chadwick v. Parkhill Corporation, 16 Del.Ch. 105, 141 A. 823. Plaintiff's claim for damages based on the theory of fraudulent or negligent representations on the part of certain of the defendants is without merit and must be dismissed.

There being no dispute as to the facts here deemed material, plaintiff's motion for summary judgment will be denied while similar motions of the moving defendants will be granted.

Order on notice.